IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUL 3 0 2007
CLERK, U.S. DISTRICT COURT
By _____
Deputy

NELSON GONGORA,           §
                         §
        Petitioner,       §
                         §
                         §
VS.                      §    NO. 4:06-CV-836-A
                         §
NATHANIEL QUARTERMAN, Director, §
Texas Department of Criminal §
Justice, Institutional    §
Division,                §
                         §
        Respondent.       §

MEMORANDUM OPINION
and
ORDER

Came on for consideration the petition for writ of habeas

corpus ("petition")[1] filed by Nelson Gongora ("Gongora"), an

inmate in the Texas Department of Criminal Justice, Institutional

Division, who is under sentence of death.  The court has

determined that the petition should be denied for the reasons set

forth in this memorandum opinion and order.

---

[1]While the undersigned recognizes that 28 U.S.C. § 2254 contemplates the
filing of an "application" for writ of habeas corpus, the practice of the
Northern District of Texas has long been instead to use the term "petition."
Consistent with this now ingrained practice, the undersigned refers to
Gongora's application under 28 U.S.C. § 2254 for writ of habeas corpus as the
"petition" and uses the term "petitioner" in lieu of "applicant."

## Procedural History

On March 27, 2003, Gongora was convicted of capital murder in the 371st Judicial District of Tarrant County, Texas, Judge James R. Wilson presiding. Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal Procedure Article 37.071, §§ 2(b) and (e), Judge Wilson sentenced Gongora to death. See 4 CR[2] at 941-42. The Texas Court of Criminal Appeals affirmed his conviction on February 1, 2006, in an unpublished opinion. See Gongora v. State, No. 74-636, 2006 WL 234987 (Tex. Crim. App. Feb. 1, 2006). The Supreme Court subsequently denied his petition for writ of certiorari. See Gongora v. Texas, ___ U.S. ___, 127 S. Ct. 142 (2006).

Gongora initiated state-habeas proceedings in the convicting court. On September 25, 2006, the trial court entered findings of fact and conclusions of law recommending that state-habeas relief be denied. See Ex parte Moore, No. 60, 115-02; SH at 52-

---

[2] A copy of Gongora's state-court records was forwarded to the court on December 15, 2006. The "CR" reference is to the clerk's record of the documents filed in the case. The "RR" reference is to the court reporter's record of the transcribed, state-trial proceedings. Where available, citations to both "CR" and "RR" are preceded by volume number and followed by the relevant page number(s). The "SH" reference is to the records of Gongora's state-habeas proceeding. Citations to "SH" are followed by the relevant page number(s).

57.  By an unpublished order, the Texas Court of Criminal Appeals adopted those findings and conclusions and denied habeas relief on November 15, 2006.  See Ex parte Moore, No. 60, 115-02 (Tex. Crim. App. 2006).  The instant federal-habeas proceeding ensued.

## II.

### Underlying Facts

The Court of Criminal Appeals offered the following brief summary of the trial evidence:

> On the night of April 7, 2001, Juan Vargas was driving his van accompanied by [Gongora], Carlos Almanza, Albert Orosco, Steven Gongora, and James Luedtke when they saw Delfino Sierra walking down the street and decided to rob him.  When Vargas pulled over, [Gongora] and Orosco jumped out of the van, ran toward Sierra, and demanded his money.  When Sierra began to run, [Gongora] shot him in the head with a .38 caliber handgun.  [Gongora] and Orosco then returned to the van.  [Gongora] told his companions that he "took [Sierra's] dreams: and did "what [he] had to do" and warned them to remain silent.[3]  [Gongora] appeared to be bragging about what he had done.  The group then returned to [Gongora's] house for a cookout.

> [Gongora] and Vargas were leaders in the criminal street gang Puro Li'l Mafia ("PLM").  Approximately two hours after [Gongora] killed Sierra, Vargas drove [Gongora] and Almanza to the house of a rival gang member.  Almanza, in order to become a PLM member, shot into the house in retaliation for drive-by shootings that had occurred at [Gongora's] house.  During the shooting, [Gongora] stood outside the van armed with a

---

[3]Brackets in quotations in original.

3

nine-millimeter handgun. The victim of this shooting survived.

Several days later, an anonymous phone call helped establish that Vargas and Maria Morales owned the suspect van. Vargas was arrested on April 27, and gave a written statement to police naming Almanza as Sierra's killer. On May 9, Vargas met with Detective Carlos Ortega to correct the falsehoods in his first statement and identified [Gongora] as the shooter. Vargas explained that he had initially lied because he feared retaliation from [Gongora].

On June 19, after he was arrested pursuant to a warrant, [Gongora] waived his rights and gave a voluntary signed statement. In his signed statement, [Gongora] admitted getting out of the van with others to rob Sierra. Then he heard shots and saw the man lying on the ground, but claimed not to know who fired the shots.

See Gongora, No. 74-636, 2006 WL 234987, at *4.

## III.

### Scope of Review

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"). Under AEDPA, the ability of federal courts to grant habeas relief to state prisoners is narrowly circumscribed:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> (1)   resulted in a decision that was
> contrary to, or involved an unreasonable
> application of, clearly established Federal
> law, as determined by the Supreme Court of
> the United States; or
>
> (2)   resulted in a decision that was
> based on an unreasonable determination of the
> facts in light of the evidence presented in
> the State court proceeding.

AEDPA, § 104(3) (codified at 28 U.S.C. § 2254(d)).  AEDPA further

provides:

> (e)(1)   In a proceeding instituted by an
> application for a writ of habeas corpus by a person in
> custody pursuant to the judgment of a State court, a
> determination of a factual issue made by a State court
> shall be presumed to be correct.  The applicant shall
> have the burden of rebutting the presumption of
> correctness by clear and convincing evidence.

AEDPA § 104(4) (codified at 28 U.S.C. § 2254(e)(1)).

Having reviewed the petition, the response, the record, and

applicable authorities, the court finds that none of Gongora's

grounds has merit.

IV.

Grounds for Relief

Gongora urges five grounds in support of his petition. They

are, in Gongora's language, as follows:

First Ground:

> [Gongora] is being denied due process of law and
> is being subjected to cruel and unusual punishment in

5

violation of the Eight[h] and Fourteenth Amendments by being subjected to the death penalty because he was able to anticipate that death might result from his participation in the robbery.

Gongora Pet. at 22-23.

Second Ground:

[Gongora] is being denied due process of law and his rights under the Fifth, Sixth, and Fourteenth Amendments when the prosecution commented upon his failure to testify several times in closing arguments.

Id. at 34.

Third Ground:

[Gongora] is being denied due process of law and his rights under the Fifth, Sixth, and Fourteenth Amendments when the trial court refused to allow him to confront and impeach the major witness against him, Juan Vargas, with his tearful statements to his wife on the night of the shooting that Carlos Almanza had shot the man for no reason.

Id. at 60.

Fourth Ground:

[Gongora] was denied due process of law and his rights under the Fifth, Sixth, and Fourteenth Amendments when the prosecutorial misconduct deprived [him] of two critical mitigation witnesses.

Id. at 66.

Fifth Ground:

[Gongora] was denied due process of law and his rights under the Fifth, Sixth, and Fourteenth Amendments when the indictment under which he was

charged failed to allege that [he] would be held as a party and specifically as a co-conspirator.

Id. at 70.

V.

Discussion

A.     First Ground: The claim that the death penalty as to Gongora is unconstitutional, because it is premised only on his being able to anticipate that death might result from his participation in the robbery.

As his first ground, Gongora contends that his death sentence is unconstitutional, because the jury, both at the guilt/innocence phase and the punishment phase, made no finding of culpability in the death of Delfino Sierra greater than that he "anticipated" that a life would be taken during the course of the robbery in which he participated.  While there was evidence that Gongora was, in fact, the shooter, there was other evidence suggesting that someone else--Albert Orosco--was the shooter. Consequently, respondent does not dispute that the jury could have found Gongora guilty of capital murder and sentenced him to death based solely on its conclusion that Gongora "anticipated" that the death of a person could result from a robbery in which he participated.[4]

---

[4]The jury charge on this issue at the guilt/innocence phase was as
(continued...)

Gongora's claim of constitutional error here is two-fold. First, he complains that jury instructions permitting conviction of capital murder and a sentence of death based on mere anticipation of a murder fails to meet the requirements set forth in the Supreme Court holdings of <u>Enmund v. Florida</u>, 458 U.S. 782 (1982) and <u>Tison v. Arizona</u>, 481 U.S. 137 (1987), both of which, in turn, concern the moral culpability necessary for the imposition of the death penalty. Second, he complains that, on

---

[4](...continued)
follows:

> Now, therefore, if you believe from the evidence beyond a reasonable doubt, that the Defendant, Nelson Gongora, . . . did . . . intentionally cause the death of an individual, Delfino Sierra, by shooting Delfino Sierra with a deadly weapon, to-wit; a firearm, and that said Defendant was . . . in the course of committing or attempting to commit the offense of robbery, of Delfino Sierra, or if you find and believe from the evidence beyond a reasonable doubt, that the Defendant, Nelson Gongora, entered into a conspiracy with Albert Orosco to commit the felony offense of robbery of Delfino Sierra and that . . . in the attempt to carry out this conspiracy, Albert Orosco did then and there intentionally cause the death of an individual, Delfino Sierra, by shooting Delfino Sierra with a deadly weapon, to-wit: a firearm, and that such offense was a felony committed in furtherance of the unlawful purpose to commit robbery of Delfino Sierra **and was an offense that should have been anticipated by the Defendant as a result of carrying out the conspiracy, then you will find the Defendant guilty of capital murder**, though he may have no intent to commit capital murder, as charged in the Indictment.

<u>See</u> 3 CR at 882 (emphasis added).

During the punishment phase, the jury was also charged with the following special issue: "Whether Defendant actually caused the death of the deceased or did not actually cause the death of the deceased but intended to kill the deceased or another **or anticipated that a human life would be taken**." <u>See</u> 4 CR at 924 (emphasis added).

8

appeal, the Texas Court of Criminal Appeals erred by attempting to satisfy the moral-culpability element by its finding that the evidence showed that Gongora was the actual shooter. See Gongora, No. 74-636, 2006 WL 234987, at *12. According to Gongora, a finding of the Texas Court of Criminal Appeals cannot supply the missing element, because, under current Supreme Court jurisprudence, only the jury, and not a judge, may find the facts necessary to elevate his sentence to death. See, e.g., Apprendi v. New Jersey, 530 U.S. 466 (2000); Ring v. Arizona, 536 U.S. 584 (2002).

Because the court finds Gongora's first complaint to be without merit, it need not reach his second. The jury instructions at issue simply do not run afoul of the Supreme Court's holdings in Enmund or Tison. In Enmund, the Supreme Court held that the death penalty could not be imposed on a party who "aids and abets a felony in the course of which murder is committed by others but who does not himself intend to kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." Enmund, 458 U.S. at 797. Unlike here, in Enmund, the record supported "no more than the inference that [the capital defendant] was the person in the car by the side of the road at the time of the killings, waiting to help the

robbers escape." Id. at 788. Under those circumstances, the Supreme Court found that the defendant did not possess a sufficiently culpable mental state to warrant a death sentence. Id. at 798. In Tison, however, the Supreme Court clarified that "major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the Enmund culpability requirement." See Tison, 481 U.S. at 158.

Gongora's conclusory assertion to the contrary, a jury finding that Gongora anticipated the death of a person meets, if not surpasses, the moral-culpability threshold of "reckless indifference to human life" under Tison. Aside from the fact that this conclusion is supported by plain logic, the very case Gongora most heavily relies upon says, in effect, the same thing. See Foster v. Quarterman, 466 F.3d 359 (5th Cir. 2006), cert. denied, ___ U.S. ___, 127 S. Ct. 2099 (2007).

In Foster, the district court had granted the capital defendant conditional habeas relief, because the jury had not made "both" requisite Tison findings. Foster, 466 F.3d at 369. The finding, however, that the district court concluded was missing had to do with the level of the defendant's

"participation in the felony committed"[5] and not with whether the defendant had acted with "reckless indifference to human life." Id. As to the latter, the district court held that "the jury had made the reckless-indifference finding" pursuant to jury instructions that were virtually identical to those at issue here.[6] Id. The Fifth Circuit approved of that holding, saying:

> [A]s the district court held, Foster obviously displayed reckless indifference to human life. The jury found as much when it answered the earlier described special issue in the affirmative (the jury could not answer that issue in the affirmative unless it found, at a minimum, [that] Foster anticipated a life would be taken).

Foster, 466 F.3d at 370.

Just as in Foster, the instructions provided to Gongora's jury meet the reckless-indifferent requirement of Tison. Because the jury made this requisite finding, Gongora's argument that the Texas Court of Criminal Appeals failed to properly address the issue is irrelevant; and, Gongora's objection to that court

---

[5]Notably, though Gongora quotes both parts of the Tison holding, Gongora does not argue constitutional error based on the "major participation" prong of Tison.

[6]One of the special issues on the imposition of the death penalty in Foster asked the jury whether it "'found from the evidence beyond a reasonable doubt that Kenneth Foster **actually caused** the decedent's death, or that he **intended to kill** the deceased or another, **or that he anticipated that a human life would be taken.**'" Foster, 466 F.3d at 368-69 (emphasis in original).

acting as fact-finder in violation of <u>Apprendi</u> and <u>Ring</u> is
rendered moot.[7]  Gongora's first ground is without merit.

B.    <u>Second Ground: The prosecution's comments on Gongora's
      failure to testify</u>.

Next, Gongora complains that, during the prosecutor's
argument at the end of the guilt-innocense phase of the trial,
the prosecutor repeatedly violated Gongora's constitutional
rights by commenting on his failure to testify.  The legal basis
for the complaint is the principle plainly stated by the Supreme
Court that "the Fifth Amendment, in its direct application to the
Federal Government, and in its bearing on the States by reason of
the Fourteenth Amendment, forbids either comment by the
prosecution on the accused's silence or instructions by the court
that such silence is evidence of guilt."  <u>See</u> <u>Griffin v.
California</u>, 380 U.S. 609, 615 (1965); <u>see also</u> <u>United States v.
Fierro</u>, 38 F.3d 761, 771 (5th Cir. 1994).  For a constitutional
error to occur, "the prosecutor's manifest intent in making the
remark must have been to comment on the defendant's silence, or
the character of the remark must have been such that the jury

_____

[7]In <u>Foster</u>, the Fifth Circuit reversed the district court's holding that
<u>Apprendi</u> and <u>Ring</u> required the jury to have found that the defendant was a
major participant in the felony.  The Fifth Circuit held that <u>Apprendi</u> and
<u>Ring</u> did not apply retroactively to Foster's case.  <u>See</u> <u>Foster</u>, 466 F.3d at
369.  Assuming they apply here, <u>Apprendi</u> and <u>Ring</u> are satisfied, because the
jury made the finding that promotes the element of which Gongora complains.

would necessarily construe it as a comment on the defendant's silence." See Jackson v. Johnson, 194 F.3d 641, 652 (5th Cir. 1999). If a constitutional error has occurred, this court must then assess whether it was harmless. See Fry v. Pliler, ___ U.S. ___, 127 S. Ct. 2321, 2325 (2007). In a federal habeas proceeding, an error is deemed harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict." Id. (citations omitted).

In his petition, Gongora repeats verbatim the relevant portions of the prosecutor's argument at the conclusion of the evidence at the guilt-innocense stage of the trial. See Gongora's Pet. at 36-45, 51-55, and 57. Having thoroughly reviewed the prosecutor's remarks, the court concludes that the prosecutor did, in fact, intend to comment on Gongora's silence. Jackson, 194 F.3d at 652. The court further concludes that the character of the remarks were such that the jury would necessarily construe them as comments on Gongora's silence. Id.

Indeed, the prosecutor's remarks on Gongora's failure to testify were numerous and blatant.[8] A few excerpts suffice to

___

[8]Notably, respondent does not argue that Gongora failed to preserve this issue. Among other things, Gongora made numerous objections at trial, two of which were sustained, and he unsuccessfully moved for mistrial. See 40 RR 101-03.

illustrate:

> You listen to people inside there. Who also would you
> want to hear from, though? The shooter? We're not
> going to talk to that person . . .

> Nelson Gongora, the shooter. That's the person on
> trial. That's the person who deserves to be found
> guilty of capital murder. Who should we go ahead and
> talk to? Who should we go ahead and present to you?
> Should we talk to the shooter?

See 40 RR at 101-102. The prosecutor's purported efforts to fix

his error only provided him with another opportunity to comment

on Gongora's silence:

> I don't want -- to make it clear, y'all, Defendant has
> a Fifth Amendment right not to testify. And, of course
> -- I don't want to give you any wrong impression on
> that whatsoever. What I want to talk to you about is
> this. When you talk about the credibility of a person,
> I wish you -- and I made a -- I made a big mistake
> there. I'll make it very clear. I'm talking about, do
> you want to hear from him, because you can't do that.

Id. at 103. The remarks speak for themselves.

Having concluded that the prosecutor's remarks concerning

Gongora's failure to testify amount to constitutional error, the

court must next assess whether the error was harmless. Although

the court is extremely disappointed in the prosecutor's remarks,

the court simply cannot find any evidence in the record that his

remarks "had substantial and injurious effect or influence in

determining the jury's verdict" as required for the granting of

14

federal habeas relief. <u>See</u> <u>Fry</u>, 127 S. Ct. at 2325. As to harm, Gongora only argues in conclusory fashion that the jury struggled in reaching its verdict, because the state's case against him was weak. <u>See</u> Gongora's Pet. at 57-59; Gongora's Reply to Resp't's Answer at 24-25. Even if this were true, there is no evidence, substantial or otherwise, of a nexus between the prosecutor's improper remarks during argument and the jury's decisions.

Moreover, in addition to the absence of the requisite proof, the trial court instructed the jury to disregard a remark concerning Gongora's failure to testify that was made by the prosecutor during argument. <u>See</u> 40 RR at 102. Also, directly before the prosecutor made the arguments about which Gongora complains, the trial court instructed the jury as follows:

> In a criminal case the law permits the Defendant to testify in his own behalf but he is not compelled to do so, and the same law provides that the fact that a defendant does not testify shall not be considered as a circumstance against him. You will, therefore, not consider the fact that the Defendant did not testify as a circumstance against him; and you will not during your deliberations allude to, comment on, or in any manner refer to the fact that the Defendant has not testified.

Court's Charge, 3 CR at 882. Then, after the prosecutor's remarks of which Gongora complains, the trial court gave the jury

the following additional instruction in advance of the jury's

deliberation on punishment:

> You are instructed that our law provides that a
> defendant may testify in his own behalf if he chooses
> to do so. This, however, is a right accorded to a
> defendant, and in the event he chooses not to testify,
> that fact cannot be taken as a circumstance against
> him. In this case, the Defendant has chosen not to
> testify and you are instructed that you cannot and must
> not refer or allude to that fact throughout your
> deliberations or take it into consideration for any
> purpose whatsoever as a circumstance against him.

Court Ct.'s Charge, 4 CR at 925-26. Juries are presumed to

follow their instructions. See, e.g., Richardson v. Marsh, 481

U.S. 200, 211 (1987). Gongora's second ground is without merit.

C.  Third Ground: The alleged refusal to allow Gongora to
    confront and impeach Juan Vargas with his alleged
    statements to his wife on the night of the shooting.

At trial, Juan Vargas ("Vargas"), who had been with Gongora

the night of the shooting, identified Gongora as the shooter.

Gongora complains that the trial court wrongly refused to allow

him to confront and impeach Vargas with his alleged tearful

statements to his wife on the night of the shooting that Carlos

Almanza, and not Gongora, had shot the victim. He complains his

rights of due process as well as his rights under the Fifth,

Sixth, and Fourteenth Amendments were violated.

Respondent responds that this ground is unexhausted and procedurally defaulted. See Resp't's Answer at 20-26. After thoroughly reviewing the briefing, both before this court and to the state courts, the court is inclined to agree. Respondent engages in the unavoidably tedious analysis as to why this ground has not been exhausted and why it is now procedurally defaulted. Id. The court feels no compulsion or desire to repeat that factual and legal analysis here.

Suffice it to say that there is a serious question as to whether Gongora fairly presented this ground to the state court.[9] To the extent he did, the Texas Court of Criminal Appeals declined to address it as inadequately briefed, which in and of itself would seem to indicate that the ground was, in fact, not fairly presented to the state courts. See Gongora, No. 74-636, 2006 WL 234987, at *4. Further telling is Gongora's seeming concession that this ground is not properly before the court. In response to respondent's numerous arguments, Gongora recites boilerplate law on the right to confrontation without any attempt to tie such law into the facts presented here. See Gongora's

---

[9] See Martinez v. Johnson, 255 F.3d 229, 238 (5th Cir. 229, 238 (5th Cir. 2001) ("The law is well established that a state prisoner seeking to raise claims in a federal petition for habeas corpus ordinarily must first present those claims to the state court and must exhaust state remedies") (citing 28 U.S.C. § 2254(b)).

Reply to Resp't's Answer at 26-27. His only specific response is: "As the State notes on page 21 of their brief, the issue regarding the presentation of the Confrontation Clause issue was briefed and addressed by the Texas Court of Criminal Appeals." Id. at 26 (citing Respt's Resp. at 21 n.7)). Respondent's brief, however, says no such thing.

Had Gongora had a legitimate response to respondent's arguments, he surely would have made one. The court concludes that ground three is unexhausted. Because the state courts would, in turn, now find ground three procedurally barred for failing to raise it there initially, this claim is deemed defaulted for purposes of federal habeas review as well. See, e.g., Gray v. Netherland, 518 U.S. 152, 161-62 (1996).[10]

Even if properly before the court, this ground would still fail. "A state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." See Johnson v. Puckett, 176 F.3d 809, 820 (5th Cir. 1999) (citation omitted). Gongora has not met this standard for the

---

[10]Notably, while failure to preserve error in state court can be excused if a petitioner can demonstrate cause or prejudice for his default in the state proceedings, Gongora makes no effort to do so here. See Gray, 518 U.S. at 162.

simple reason that his counsel, without any interference from the trial court, did, in fact, attempt to impeach Vargas with the contradicting statements Vargas made to his wife the night of the shooting. See 37 at RR 150-158.

To the extent that Gongora expands this ground to include his counsel's examination of Vargas's wife regarding what Vargas told her the night of the shooting, it still fails. Gongora's counsel was free to, and did, question her about the statements her husband made that night, but she refused to testify, invoking the Fifth Amendment and the husband/wife privilege. See 39 RR at 22-38. Gongora has not persuaded this court that the trial court erred in permitting her to assert those privileges.

Finally, in the event that Gongora is complaining that the trial court should have admitted independent evidence of Vargas's prior inconsistent statements to his wife, this complaint is equally baseless. The only other evidence consisted of a detective's notes of what Vargas's wife told him Vargas said to her the night of the shooting. The prosecutor objected to the admission of the notes as hearsay, and the court sustained that objection. See 38 RR at 135-142. Gongora offers no legal authority that the trial court erred in this ruling.

Because Gongora has failed to demonstrate that any trial-court ruling concerning Vargas's prior inconsistent statements to his wife either ran afoul of a specific constitutional right or otherwise rendered his trial fundamentally unfair, Gongora has not stated a cognizable habeas claim.  See Johnson, 176 F.3d at 820.  The third ground is without merit.

D.    Fourth Ground: Claimed prosecutorial misconduct
      allegedly deprived Gongora of two critical mitigation
      witnesses.

Immediately prior to being called as witnesses for Gongora during the punishment phase of trial, Gongora's two sisters were arrested on warrants alleging that they had threatened a co-defendant's family members who had been watching the proceedings. The prosecution informed the trial judge of the arrest warrants prior to the start of trial the morning of their arrest, but asked that defense counsel not be told out of fear that they would inform Gongora, who then might interfere with the ongoing investigation of his sisters.  41 RR at 62-63.  After trial resumed, the trial judge sent the jury out twice, both times during cross examinations being conducted by defense counsel, so that the officers could effectuate the arrests of Gongora's sisters at the courthouse, but outside the presence of the jury. Id. at 56-62.  Both sisters subsequently invoked their right to

remain silent and refused to testify as witnesses for Gongora. Gongora claims that he was denied due process and his rights under the Fifth, Sixth, and Fourteenth Amendments were violated when this alleged prosecutorial misconduct deprived him of these two mitigation witnesses.

In habeas corpus proceedings, prosecutorial misconduct during a state criminal trial is reviewed to determine whether it so infected the trial with unfairness as to make the resulting conviction a denial of due process. See, e.g., Barrientes v. Johnson, 221 F.3d 741, 753 (5th Cir. 2000) (citations omitted); Greer v. Miller, 483 U.S. 756, 765 (1987). Improper conduct by a state prosecutor is not of constitutional magnitude and will not warrant federal habeas corpus relief unless the conduct is so prejudicial that it rendered the trial fundamentally unfair. See, e.g., Barrientes, 221 F.3d at 753; Darden v. Wainwright, 477 U.S. 168, 180-81 (1986); Dowthitt v. Johnson, 230 F.3d 733, 755 (5th Cir. 2000). A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted. Barrientes, 221 F.3d at 753 (citations omitted).

As an initial matter, the court is not persuaded that prosecutorial misconduct occurred with respect to these two

witnesses.  Although the arrests perhaps could have been accomplished in a manner less disruptive to the defense, in the end the threatening conduct of the witnesses themselves, which conduct ultimately resulted in their both being criminally convicted, caused this unfortunate situation.  Further, that the arrests were made outside of the presence of the jury negated any possibility that the jury could be prejudiced by the mere fact of the arrests.

As to the substantive loss of their testimony, Gongora's sisters purportedly were to testify generally on "family social-economics, family work stability, the practical effects of residential mobility, substance abuse within the household, general family/home environment, and [Gongora's] peers."  See Gongora's Pet. at 67; 49 RR at Exs. 19-20.  Even assuming the existence of prosecutorial misconduct, had this evidence been presented, there is no "reasonable probability that the verdict might have been different," see Barrientes, 221 F.3d at 753, because, as detailed below, this evidence was largely duplicative of the testimony of, inter alia, Basilisa Gongora, Gongora's mother, and Mary Ann Cuestas, Gongora's wife.

Specifically, Gongora's mother painted a detailed picture of Gongora's difficult childhood--how he had witnessed the murder of

his father at age ten, and how, thereafter, she, now a single
mother, was forced to move their large family again and again to
poorer and poorer neighborhoods including public housing.
Gongora's wife spoke about how she had a baby out of wedlock at
age fifteen and how Gongora accepted the baby as his own. She
told how their relationship began when he was only fourteen and
she was only sixteen and of his being a good and kind father to
the four children they have together. Notably, two of the
children, a set of twins, were born prematurely and have medical
problems. She spoke of how he worked hard to support his family,
sometimes walking six miles on foot to get home from work and
how, though they were poor, Gongora was nonetheless generous in
giving money to friends who might need money for one of their
children. See 44 RR 140-240.

In short, the court concurs with the Texas Court of Criminal
Appeals that Gongora was not deprived of the mitigation evidence
of which he complains here, but rather was merely denied the
ability to present it in the precise manner that he wished. See
Gongora, No. 74-636, 2006 WL 234987, at *5. Gongora cites to no
legal authority,[11] and the court is otherwise unaware of any,

---

[11]The only case cited by Gongora does not involve the ability to present
(continued...)

that his not being able to present his mitigation evidence in the exact way he desired rises to the level of a constitutional violation.  The fourth ground is without merit.[12]

E.   Fifth Ground: The indictment under which he was charged failed to allege that his participation as a party or co-conspirator.

Finally, Gongora claims the denial of due process and the violation of his rights under the Fifth, Sixth, and Fourteenth Amendments, because the indictment under which he was charged failed to allege his participation as a party or co-conspirator[13]

---

[11](...continued)
evidence in a certain way and, moreover, is wholly distinguishable from the facts here.  See Lee v. Kema, 534 U.S. 362 (2002).  Far from involving the loss of duplicative witness testimony, in Lee, the defendant's sole defense was that he was in another state with his family at the time of the murder. On the day they were to testify, however, all of the family members who were to testify in support of defendant's alibi inexplicably vanished from the courthouse, and the trial court denied defendant's motion for an overnight continuance.  Id. at 365-370.  Under these unique circumstances, the Supreme Court concluded that the case fell "within the small category of cases in which asserted state grounds are inadequate to block adjudication of a federal claim."  Id. at 381.

[12]In cursory fashion, Gongora requests an evidentiary hearing to supplement the record on both the substance of his sister's would-be testimony and the disposition of the criminal charges against them.  See Gongora's Pet. at 67, 75.  He claims that "an evidentiary hearing would show that the charges were reduced to misdemeanors some time after Mr. Gongora was sentenced to death."  Id. at 67.  The court need not hold an evidentiary hearing where, as here, the court is satisfied that it has sufficient facts before it to make an informed decision on the merits of a claim.  See McDonald v. Johnson, 139 F.3d 1056, 1060 (5th Cir. 1998).  Gongora's request for an evidentiary hearing on this ground is thus properly denied.

[13]The indictment contains two counts that together allege that Gongora murdered Delfino Sierra with a firearm while in the course of committing a felony and placed Delfino in fear of imminent bodily injury or death.  See 1 CR at 3.

yet the jury was instructed on these issues. <u>See</u> Gongora's Pet. at 71-75. This ground is readily disposed of as without merit.

Indeed, Gongora readily concedes that the Texas Court of Criminal Appeals has specifically held that notice in the indictment under the circumstances of this case is not required. <u>See</u> Gongoara's Pet. at 72 (citing <u>Montoya v. State</u>, 810 S.W.2d 160, 164-65 (Tex. Crim. App. 1989), <u>rev'd in part on other grounds</u>, <u>Montoya v. Scott</u>, 65 F.3d 405 (5th Cir. 1995)). Here, the court's charge to the jury did not instruct it to consider whether Gongora was guilty of the separate offense of conspiracy as set out in Section 15.02 of the Texas Penal Code. Rather, the court's charge merely instructed the jury under Texas's "law of the parties" statute as codified in Section 7.02(b) of the Texas Penal Code. The instruction was:

> If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of carrying out of the conspiracy.

<u>See</u> Tex. Penal Code § 7.02(b); <u>see</u> <u>also</u> Court's Charge, 3 CR at 881.

Under Texas law, "[i]t is well accepted that the law of the parties may be applied to a case even though no such allegation is contained in the indictment." See Montoya, 810 S.W.2d at 65; see also Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005) ("It is well settled, and [defendant] does not contest the rule, that the law of the parties need not be pled in the indictment.") (citations omitted). Notably, in the subsequent habeas proceeding involving Montoya, the Fifth Circuit expressly held that Texas's "'law of the parties'" may support a conviction for capital murder", and one "is not entitled to habeas relief based on [a] trial court's § 7.02(b) instruction." See Montoya, 65 F.3d at 415 (citations omitted). Moreover, respondent is correct in his assertion that this ground must fail under the settled principle that it is not a federal-habeas-corpus court's function to review a state's interpretation of its own law as Gongora asks the court to do here. See Weeks v. Scott, 55 F.3d 1059, 1063 (5th Cir. 1995). The fifth ground is without merit.

VI.

Order

For the reasons discussed herein,

The court ORDERS that Gongora's petition be, and is hereby,

denied.

SIGNED July 30, 2006.

_____
JOHN McBRYDE
United States District Judge